STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-468

STATE OF LOUISIANA

VERSUS

ROBERT THOMAS SMITH

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, DOCKET NO. 259,154
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, Michael G. Sullivan, and James T. Genovese, Judges.

AFFIRMED.

Mary Constance Hanes
Louisiana Appellate Project
Post Office Box 4015
New Orleans, Louisiana 70178-4015
(504) 866-6652
COUNSEL FOR DEFENDANT/APPELLANT:
    Robert Thomas Smith

James C. Downs
District Attorney - Ninth Judicial District
ADA Michael W. Shannon
Post Office Drawer 1472
Alexandria, Louisiana 71309
(318) 473-6650
COUNSEL FOR APPELLEE:
    State of Louisiana

**GENOVESE, Judge.**

Defendant, Robert Thomas Smith, appeals his second degree murder conviction and life sentence. For the following reasons, we affirm Defendant's conviction and sentence.

## CASE HISTORY

On October 19, 2000, the Defendant, Robert Thomas Smith, was charged by bill of indictment with second degree murder, a violation of La.R.S. 14:30.1, to which the Defendant entered a plea of not guilty. The indictment was amended on September 7, 2001, charging the Defendant with first degree murder, a violation of La.R.S. 14:30. The indictment was amended again on January 28, 2002, charging the Defendant with second degree murder. On August 14, 2003, the indictment was amended for the third time, charging the Defendant with manslaughter, a violation of La.R.S. 14:31. On the same date, the Defendant entered a combined plea of guilty to manslaughter as well as aggravated robbery, which was found in docket number 270,559, and the State agreed to a sentencing cap of sixty years at hard labor. On October 21, 2003, the Defendant was sentenced to twenty years on the aggravated robbery charge and to forty years on the manslaughter charge. The sentence for manslaughter was ordered to run consecutively with the sentence for aggravated robbery.

In *State v. Smith*, 04-338 (La.App. 3 Cir. 9/29/04), 883 So.2d 505, this court vacated and set aside the Defendant's guilty pleas to both aggravated robbery and manslaughter because the crime of aggravated robbery was nonexistent at the time of the commission of the offenses. The matter was remanded to the trial court for further proceedings.

1

The Defendant subsequently proceeded to trial on the charge of second degree murder. Jury selection commenced on October 18, 2005, and on October 20, 2005, the jury returned a verdict of guilty. On October 26, 2005, the Defendant was sentenced to life imprisonment to be served without benefit of probation, parole, or suspension of sentence.

A Motion for Appeal was filed and subsequently granted on March 1, 2006. The Defendant's appeal was lodged with this court under docket number 06-722 on June 2, 2006. In *State v. Smith*, 06-722 (La.App. 3 Cir. 8/2/06), 936 So.2d 314, this court dismissed the Defendant's appeal because the motion for appeal was untimely filed and remanded the case to the trial court for further proceedings.

On November 30, 2006, the Defendant filed an "Application for Post-Conviction Relief for an Out of Time Appeal" and various other documents. An out-of-time appeal was granted on February 27, 2007. The Defendant is now before this court asserting four assignments of error through counsel and three *pro se* assignments of error. Therein, the Defendant contends that the trial court erred in denying his motion for mistrial, that the trial court abused its discretion in allowing the introduction of cumulative and gruesome photographs of the victim's body, that his sentence is excessive, and that his defense counsel was ineffective for failing to file a motion to reconsider sentence. We find that these assignments of error lack merit. The Defendant additionally asserts that his trial counsel was ineffective for failing to object to erroneous jury instructions, failing to investigate his mental history, and failing to call several witnesses. All claims regarding ineffective assistance of counsel, except the claim involving the definition of manslaughter, are relegated to post-conviction relief. The Defendant's claim that the trial court

2

improperly instructed the jury regarding the definition of manslaughter likewise lacks merit.

**FACTS**

On October 1, 2001, the Defendant, along with Joseph Loyd Ward, kidnapped, robbed, and murdered the Defendant's sister.

**ASSIGNMENT OF ERROR NO. 1**

In his first assignment of error, the Defendant contends that the trial court abused its discretion in denying his motion for mistrial, which was brought on the ground that five of the twelve jurors heard or read about the case during trial. In brief to this court, the Defendant asserts that a mistrial should have been granted under La.Code Crim.P. art. 775 because he suffered substantial prejudice and was denied a fair trial when five of the seated jurors violated the trial court's instructions not to read or listen to any outside information about the trial.

On the third day of trial, defense counsel informed the trial court that there was an article in the newspaper regarding the Defendant's case and that the article set forth details about opening statements, remarks about the facts the State intended to prove, and the fact that the Defendant had previously pled guilty to manslaughter. The trial court addressed the jury and inquired as to whether they had read the newspaper article or saw anything on the television news regarding the Defendant's case. Five jurors responded in the affirmative. The trial court then conducted an individual voir dire with those five jurors.

Juror Walker testified that her husband turned on the television that morning, heard the victim's name, and then turned off the television. Juror Burks testified that on the 6:00 p.m. news the previous day, she heard something about a murder trial,

3

then walked out of the room. Juror Gistrob testified that she was in the kitchen cooking and heard a 6:00 p.m. news report which indicated the Defendant shot his sister. Juror Smith testified that she heard the Defendant's last name on the 10:00 p.m. news report, and, at that time, she put her hands over her ears, started hollering, and left the room. Juror Tudor testified that he read the newspaper and saw a headline that looked like it might pertain to the case but avoided that article.

After questioning the jurors, the trial court stated that none of the jurors had seen or heard anything pertaining to the fact that the Defendant had previously entered into a plea agreement. The trial court informed the attorneys that it had someone speak to the local television station and that the television station indicated that there were no reports regarding the case on the 5:00 or 6:00 p.m news. However, the matter was reported on the 10:00 p.m. news, but there was no mention of the Defendant's prior guilty plea. The trial court noted that Burks and Gistrob testified that they heard reports about the case on the 6:00 p.m. news.

Defense counsel subsequently moved for a mistrial, stating the following:

But because I didn't see the 6:00 or the 10:00 o'clock news last night, I didn't see the paper this morning. I am going to ask for a mistrial based on the confusion by those two by Ms. Burks and Ms. Gistrob, after the Court has gotten it from Channel 5 that they didn't air anything at 6:00, but in fact at 10:00, because there may be just as much confusion on what they heard. And out of an abundance of caution, I would request a mistrial.

The trial court took the matter under advisement, indicating it would review the reports presented at the 5:00, 6:00, and 10:00 p.m news.

At the sentencing hearing, the State informed the trial court that the motion for mistrial was ruled on at trial, but that the ruling was probably not on the record. The trial court then denied the motion, finding that none of the jurors had any knowledge

4

of the Defendant's prior guilty plea.

The record indicates that defense counsel limited her basis for mistrial to the confusion regarding statements made by jurors Burks and Gistrob. Accordingly, whether the five jurors questioned by the trial court were influenced or tainted by pre-trial publicity is not properly before this court, as it was not the basis for a mistrial presented in the trial court.

The Defendant also questioned Gistrob's credibility. The Defendant argues that although Gistrob claimed she did not pay attention to the news report, her claim is simply not credible. The Defendant asserts that if Gistrob was untruthful to the court on the subject of whether she paid attention to the news report, she was very possibly untruthful about whether the news report had any effect on her ability to be impartial.

Defense counsel moved for a mistrial based on the issue of whether Gistrob heard a news report at 6:00 p.m. and the confusion surrounding the issue of what she might have heard. The trial court indicated it would watch the pertinent news reports, but did not later state for the record whether it had watched the reports and whether Gistrob's testimony was accurate. Therefore, there is no definitive answer in the record regarding whether there was a news report pertaining to the Defendant's case on the 6:00 p.m. news. Based on the record, we cannot say Gistrob's testimony was not credible. Therefore, the Defendant's argument is not supported by the record.

For these reasons, we find this assignment of error lacks merit.

**ASSIGNMENT OF ERROR NO. 2**

In his second assignment of error, the Defendant contends that the trial court abused its discretion in allowing the State to introduce, over objections from defense

counsel, cumulative and gruesome photographs of the victim's body.

At trial, defense counsel objected to State Exhibits 14 through 22 on the basis of their potential to shock the jury and because they were repetitious. After reviewing the photographs, the trial court found that the probative value of the photographs clearly exceeded any prejudicial effect and were, therefore, admissible.

The Defendant argues that the trial court erred in concluding that the probative value of the photographs outweighed the prejudicial effect they would have on the jury. The Defendant argues that the cumulative, gruesome photographs served to inflame the jury.

> This Court held in *State v. Letulier*, that even where the cause of death is not at issue, the State is entitled to the moral force of its evidence. *State v. Letulier*, 97-1360, (La.7/8/98), 750 So.2d 784, 795. Therefore, postmortem photographs of murder victims are admissible to prove *corpus delicti*, to corroborate other evidence establishing cause of death, location, placement of wounds, as well as to provide positive identification of the victim. *Id.* In *Letulier*, the defendant stabbed an elderly man to death, robbed him of his social security income, and dumped his body in a local levee. *Id.* at 787. The State introduced pictures of the victim during the testimony of his daughter for identification purposes, as well as during the testimony of Det. Scott Haydel, a detective with the St. Martin Sheriff's Office, to explain the condition of the body when it was found. *Id.* at 795. Photographic evidence will be admitted unless it is so gruesome as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient evidence, or, as explained in La. C.E. art. 403, when the prejudicial effect of the photographs substantially outweighs their probative value. *Id. See also State v. Koon*, 96-1208, (La.5/20/97); 704 So.2d 756; *State v. Maxie*, 93-2158, (La. 4/10/95); 653 So.2d 526; *State v. Martin*, 93-0285, (La. 10/17/94); 645 So.2d 190.

*State v. Robinson*, 02-1869, p. 28 (La. 4/14/04), 874 So.2d 66, 85-86, *cert. denied*, 543 U.S. 1023, 125 S.Ct. 658 (2004).

The photographs at issue are as follows:

> 1. a photograph of the victim in the position in which she was found. The victim's breasts are exposed, and there is little visible blood. Exhibit S-14.
>
> 2. a photograph of the victim taken from a different

6

position than Exhibit S-14. There is little, if any, visible blood. Exhibit S-15.

3. a photograph of the victim from the top of her head to the bottom of her feet. The victim's breasts are exposed, and there is visible blood on her face and chest area. Exhibit S-16.

4. a close-up of the victim's face. There is visible blood on the face and shirt. Exhibit S-17.

5. a photograph of the victim from a different angle than Exhibit S-17. The victim's breasts are exposed, and there is visible blood on the face, shirt, and chest. Exhibit S-18.

6. a medium range photograph of the victim's legs and feet. There is no visible blood. Exhibit S-19.

7. a photograph of the victim's torso and head taken at a ninety degree angle. There is visible blood on the victim's face and shirt. This photograph is very similar to Exhibit S-17. Exhibit S-20.

8. an intermediate photograph of a gunshot wound to the victim's lower left breast. The breasts are exposed, and there is little visible blood. Exhibit S-21.

9. a photograph of a second gunshot wound. The gunshot wound depicted in Exhibit S-21 is also visible. The breasts are exposed, and there is visible blood. Exhibit S-22.

We find that while the photographs do depict some blood and nudity, none of the photographs complained of are particularly gruesome. We also find that although some of these photographs do depict the same area of the body, they are not merely repetitive or cumulative. Each photograph was taken from a different angle and depicted a different view of the victim's body. Moreover, the photographs are relevant to show the location of the victim's wounds and the condition and location of her body. The record supports the trial court's determination that the probative value of these photographs is outweighed by their prejudicial effect. Accordingly, we

find this assignment of error lacks merit.

## ASSIGNMENT OF ERRORS NOS. 3 & 4

In his third assignment of error, the Defendant contends that his life imprisonment sentence is excessive under the circumstances of this case because he is exceptional. In his fourth assignment of error, the Defendant claims ineffective assistance of counsel in that his trial counsel failed to file a motion to reconsider sentence. As these two assignments of error pertain to the Defendant's sentence, they will be addressed at the same time.

Louisiana Code of Criminal Procedure Article 881.1 states that within thirty days of the imposition of a sentence, a defendant may make or file a motion to reconsider that sentence. Generally, the failure to make or file a timely motion to reconsider sentence precludes a defendant from raising an objection to the sentence on appeal. *State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-578 (La. 1/31/03), 836 So.2d 59. The Defendant did not orally object to his sentence and failed to file a written motion to reconsider sentence. However, the Defendant argues that defense counsel's failure to file a motion to reconsider sentence constituted ineffective assistance of counsel and should not bar appellate review of his sentence.

This court discussed ineffective assistance of counsel for failure to file a motion to reconsider sentence in *State v. Findlay*, 06-1050, p. 4 (La.App. 3 Cir. 2/7/07), 949 So.2d 609, 611-12, as follows:

> This court considered a similar issue in *State v. Prudhomme*, 02-511, p. 16 (La.App. 3 Cir. 10/30/02), 829 So.2d 1166, 1177, *writ denied*, 02-3230 (La. 10/10/03), 855 So.2d 324, stating:
>
> > Failure to file a motion to reconsider the sentence does not necessarily constitute ineffective assistance of counsel. *State v. Texada*, 98-1647 (La.App. 3 Cir. 5/5/99); 734 So.2d 854. Nevertheless, the defendant may have a

basis to claim ineffective assistance of counsel when he can show a reasonable probability, but for defense counsel's error, his sentence would have been different. *Id.* Furthermore, in *State v. Francis*, 99-208 (La.App. 3 Cir. 10/6/99); 748 So.2d 484, *writ denied*, 00-0544 (La. 11/13/00); 773 So.2d 156, this court stated:

> A claim of ineffective assistance of counsel is properly raised in an application for post conviction relief. This allows the trial judge an opportunity to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record contains evidence sufficient to decide the issue and the issue is raised by an assignment of error on appeal, it may be considered. *State v. James*, 95-962 (La.App. 3 Cir. 2/14/96); 670 So.2d 461.

We find that there is sufficient evidence in the record to address the Defendant's claim of ineffective assistance of counsel and determine whether there was a reasonable probability that the trial court would have reduced his sentence had a motion to reconsider sentence been filed.

The Defendant was convicted of second degree murder and sentenced to the mandatory term of life imprisonment. La.R.S. 14:30.1.

> Louisiana courts have consistently held that a mandatory sentence of life imprisonment for second degree murder does not constitute cruel and unusual punishment. *State v. Graham*, 422 So.2d 123 (La.1982), *appeal dismissed*, *Graham v. Louisiana*, 461 U.S. 950, 103 S.Ct. 2419, 77 L.Ed.2d 1309 (1983); *State v. Pendelton*, 96-367 (La.App. 5 Cir. 5/28/97), 696 So.2d 144, *writ denied*, 97-1714 (La. 12/19/97), 706 So.2d 450; *State v. Hill*, 98-1087 (La.App. 5 Cir. 8/31/99), 742 So.2d 690, *writ denied*, 99-2848 (La. 3/24/00), 758 So.2d 147.

*State v. Lovick*, 00-1833, p. 15 (La.App. 5 Cir. 5/16/01), 788 So.2d 565, 573, *writ denied*, 01-1836 (La. 5/10/02), 815 So.2d 833; *see also State v. Adams*, 04-77 (La.App. 3 Cir. 9/29/04), 884 So.2d 694, *writ denied*, 04-2709 (La. 2/25/05), 894 So.2d 1131, *writ denied*, 04-2880 (La. 2/25/05), 894 So.2d 1132; *State v. Paddio*, 02-722 (La.App. 3 Cir. 12/11/02), 832 So.2d 1120, *writ denied*, 03-402 (La. 2/13/04),

867 So.2d 682. Therefore, we find that the Defendant's life sentence is not excessive. Accordingly, there was no reasonable probability that the trial court would have reduced the Defendant's sentence had defense counsel filed a motion to reconsider sentence.

The Defendant also asserts that his sentence is excessive because he is exceptional.

> [A] court may depart from mandatory penalties provided by the legislature for an offense upon a showing by the defendant that he is "exceptional, which in this context means that because of unusual circumstances [he] is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances." *State v. Johnson*, 97-1906, p. 8 (La.3/4/98), 709 So.2d 672, 677 (internal quotation marks and citation omitted); *see also State v. Dorthey*, 623 So.2d 1276, 1280-81 (La.1993) (holding that a trial court must reduce a defendant's sentence to one not constitutionally excessive if the trial court finds that the sentence mandated by the Habitual Offender Law "makes no measurable contribution to acceptable goals of punishment," or is nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime").

*State v. Lemons*, 06-1051, p. 1 (La. 11/17/06), 942 So.2d 33, 33-34.

The Defendant argues that he is exceptional, that the trial court failed to consider that he was only eighteen years of age at the time of the offense, that he was suffering from post-traumatic stress disorder, that he had been treated for serious emotional problems since childhood, and that his problems were exacerbated by his experiences within the juvenile justice system. A review of the record indicates that the Defendant did not present these factors to the trial court at the sentencing hearing and did not argue that he was exceptional. Accordingly, the trial court did not abuse its discretion in sentencing the Defendant to life imprisonment.

For these reasons, we find that assignments of error three and four lack merit.

**_PRO SE_ ASSIGNMENT OF ERROR NO. 1**

In his first *pro se* assignment of error, the Defendant contends that his counsel's failure to make objections to erroneous jury instructions established ineffective assistance of counsel.

> "Initially we note that ineffective assistance of counsel claims are usually addressed in post-conviction proceedings, rather than on direct appeal." *State v. Deruise*, 1998-0541[,] p. 35 (La.4/3/01), 802 So.2d 1224, 1247-1248, *cert. denied*, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001). The post-conviction proceeding allows the trial court to conduct a full evidentiary hearing, if one is warranted. *State v. Howard*, 1998-0064[,] p. 15 (La.4/23/99), 751 So.2d 783, 802, *cert. denied*, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999). Where the record, however, contains evidence sufficient to decide the issue, and the issue is raised on appeal by an assignment of error, the issue may be considered in the interest of judicial economy. *State v. Smith*, 1998-1417 (La.6/29/01), 793 So.2d 1199 (Appendix, p. 10), *cert. denied*, 535 U.S. 937, 122 S.Ct. 1317, 152 L.Ed.2d 226 (2002); *State v. Ratcliff*, 416 So.2d 528 (La.1982).

*State v. Leger*, 05-11, p. 44 (La. 7/10/06), 936 So.2d 108, 142, *cert. denied*, __ U.S. __, 127 S.Ct. 1279 (2007).

***Manslaughter***

The Defendant contends that the trial court erred by charging the jury under the wrong element of manslaughter in that the trial court instructed the jury that "specific intent to kill or inflict great bodily harm" was an essential element of manslaughter. The Defendant contends that his trial counsel failed to object; therefore, counsel was ineffective.

The trial court instructed the jury regarding manslaughter as follows:

> Manslaughter is a responsive lesser offense. Manslaughter is the killing of a human being when the defendant has specific intent to kill, but the killing is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled or that an average person's blood would have cooled

11

at the time the offense was committed.  Thus, in order to convict the defendant of manslaughter, you must find beyond a reasonable doubt that the defendant killed the victim, that the defendant had specific intent to kill, and that the killing was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection.

Manslaughter is defined as;

(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.  Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed . . . .

La.R.S. 14:31.

Both first and second degree murder are defined, in part, as the killing of a human being when the offender has specific intent to kill.  La.R.S. 14:30 and La.R.S. 14:30.1.  Additionally, the general comment to La.R.S. 14:31 provides, in pertinent part, that:

The former Louisiana statutes made no distinction between voluntary and involuntary manslaughter.  The Criminal Code has continued this policy by including only one section on manslaughter.  Subdivision (1) is identical with the offense which is usually labelled [sic] voluntary manslaughter.  It covers intentional killings, which would otherwise come within subdivision (1) of R.S. 14:30 (murder section).

We find that the trial court's jury instructions at issue were proper; therefore, there was no basis for defense counsel to object.  Accordingly, this *pro se* claim lacks merit.

### *Law of Principals*

The Defendant also contends that defense counsel was ineffective because she allowed the trial court to instruct the jury using an incorrect definition of the law of

12

principals. The Defendant argues that not all principals are automatically guilty of the same offense. He further asserts that the charge of second degree murder requires specific criminal intent and that the principal must have the requisite mental state, since intent cannot be transferred to the accused.

The trial court instructed the jury regarding the law of principals as follows:

> All persons concerned in the commission of a crime are principals and are guilty of the crime charged if whether present or absent, they directly commit the act constituting the crime, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime.

> Under Louisiana law, a person may be convicted of intentional murder even if he has not personally struck the fatal blows. Only those persons however who knowingly participate in the planning or execution of a crime are principals. It is sufficient encouragement that the accomplice is standing by the scene of the crime ready to give some aid if needed. Thus, in order to convict the defendant of second degree murder, you must find that the defendant had specific intent to kill or do great bodily harm to Ora Christina Smith, or he was a principal to that crime, that the defendant was engaged in the commission or attempted commission of second degree kidnapping, even though he had no intent to kill or inflict great bodily harm.

We find that, if this instruction was incorrect, counsel's failure to object may have involved matters of trial strategy. *See State v. Smith*, 06-820 (La.App. 1 Cir. 12/28/06), 952 So.2d 1. Therefore, we find that the record before the court is insufficient to make definitive findings as to this claim of ineffective assistance of counsel. Accordingly, the Defendant's claim is relegated to post-conviction relief proceedings where, if warranted, a full evidentiary hearing may be conducted to develop a sufficient record on the issue raised.

### *PRO SE* ASSIGNMENT OF ERROR NO. 2

In his second *pro se* assignment of error, the Defendant contends that his trial counsel violated his due process right and right to a fair trial when he failed to

investigate the Defendant's mental history and failed to call Dr. Sautter, a psychiatrist, as a witness to assist in his theory of being diagnosed as suffering from post-traumatic stress disorder before and at the time of the crime.

It cannot be determined from the record what matters counsel investigated, and whom he spoke to regarding the Defendant's mental history. Additionally, this claim may likewise involve matters of trial strategy. The record before the court is insufficient to make definitive findings as to this claim of ineffective assistance of counsel. Thus, the Defendant's claim in this regard is relegated to post-conviction relief proceedings where, if warranted, a full evidentiary hearing may be conducted to develop a sufficient record on the issue raised.

### *PRO SE* ASSIGNMENT OF ERROR NO. 3

In his third *pro se* assignment of error, the Defendant contends that his counsel failed to investigate and subpoena material witnesses who could have proven that he was incompetent to proceed. The Defendant asserts that his trial counsel did not speak to his mother about his behavioral problems, and he sets forth a list of "psychiatric experts" who diagnosed or saw him.

It cannot be determined from the record whom counsel spoke to about the Defendant's mental history, and what matters counsel investigated. Again, the record before the court is insufficient to make any definitive findings as to the Defendant's claim of ineffective assistance of counsel in that regard. Thus, the Defendant's claim is relegated to post-conviction relief proceedings where, if warranted, a full evidentiary hearing may be conducted to develop a sufficient record on the issue raised.

## CONCLUSION

The Defendant's conviction and sentence are affirmed.

**AFFIRMED.**