# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 18-738

**STATE OF LOUISIANA**

**VERSUS**

**MICHAEL JA'REL TUTSON**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 26305-13
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

### ELIZABETH A. PICKETT
### JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Jonathan W. Perry, Judges.

**AFFIRMED.**

**Mary Constance Hanes**
**Louisiana Appellate Project**
**P. O. Box 4015**
**New Orleans, LA 70718-4015**
**(504) 866-6652**
**COUNSEL FOR DEFENDANT-APPELLANT:**
      **Michael Ja'rel Tutson**

**John Foster DeRosier**
**Fourteenth Judicial District Court District Attorney**
**Elizabeth Brooks Hollins**
**Ross M. Murray**
**Cynthia Killingsworth**
**Assistant District Attorneys**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**PICKETT, JUDGE.**

## FACTS

On August 29, 2014, Damion Jackson was outside a home peering into a window. That window was in the room where the defendant's mother, the mother's female friend, and the defendant's minor sister slept. When the defendant, Michael Ja'Rel Tutson, saw Jackson looking into the house, the defendant ran after him. Jackson stopped, turned toward the defendant, and took a step toward him. The defendant then shot Jackson. When the weapon jammed, the defendant cleared the jam and shot Jackson again. Jackson was shot three times, once in the neck, back, and left leg.

The defendant told police he had never seen Jackson before and Jackson had nothing in his hands. Police testified Jackson worked at a fast food restaurant regularly visited by the defendant's sister and mother, and Jackson frequently walked the defendant's sister to the bus stop. However, the defendant's sister denied knowing Jackson.

The defendant was charged by indictment filed on November 21, 2013, with second degree murder, a violation of La.R.S. 14:30.1.[1] Trial by jury commenced on November 27, 2017, and the jury returned a verdict of guilty of the responsive verdict of manslaughter, a violation of La.R.S. 14:31, on December 4, 2017. The defendant was sentenced on February 23, 2018, to serve forty years at hard labor. A Motion for Appeal and Designation of Record was filed on March 6, 2018, and was granted. The defendant is now before this court asserting two assignments of error: 1) counsel was ineffective for failing to file a motion to reconsider his sentence; and 2) his sentence is excessive.

---

[1]The same indictment charged Marcus Dewayne Handy, Lee James Gibbs, and Johnnie Michelle Celestine as accessories after the fact, a violation of La.R.S. 14:25 and La.R.S. 14:30.1.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENTS OF ERROR

1) Trial counsel rendered ineffective assistance at sentencing in failing to file a motion to reconsider after the trial court imposed the maximum forty-year sentence on Michael Tutson for manslaughter.

2) Mr. Tutson's forty-year sentence for manslaughter is excessive under the circumstances.

## DISCUSSION

In his first assignment of error, the defendant contends trial counsel rendered ineffective assistance in failing to file a motion to reconsider after the trial court imposed the maximum forty-year sentence for manslaughter. In his second assignment of error, the defendant contends his forty-year sentence is excessive. We will address these assignments of error collectively.

Louisiana Code of Criminal Procedure Article 881.1 provides:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> B. The motion shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

2

Neither defense counsel nor the defendant objected to the sentence imposed at the sentencing hearing or filed a motion to reconsider the defendant's sentence. Thus, under some jurisprudence, the defendant is precluded from appealing his sentence. *See State v. Bamburg*, 00-675 (La.App. 3 Cir. 11/2/00), 772 So.2d 356; *State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-578 (La. 1/31/03), 836 So.2d 59; *State v. Duplantis*, 13-424 (La.App. 3 Cir. 11/27/13), 127 So.3d 143, *writ denied*, 14-283 (La. 9/19/14), 148 So.3d 949. This court has, however, previously reviewed claims of excessiveness where no motion to reconsider sentence was filed or objection made, performing a bare excessiveness review. *State v. Jackson*, 14-9 (La.App. 3 Cir. 6/18/14), 146 So.3d 631, *writ denied*, 14-1544 (La. 2/27/15), 159 So.3d 1066; *State v. Soriano*, 15-1006 (La.App. 3 Cir. 6/1/16), 192 So.3d 899, *writ denied*, 16-1523 (La. 6/5/17), 219 So.3d 1111; *State v. Price*, 16-899 (La.App. 3 Cir. 4/5/17), 216 So.3d 304; *State v. Debarge*, 17-670 (La.App. 3 Cir. 2/7/18), 238 So.3d 491. Therefore, we will consider the defendant's arguments on appeal.

In this case, the defendant argues defense counsel was ineffective for failing to file a motion to reconsider sentence. He also notes that such a claim must be resolved on direct review, as sentencing errors are not cognizable in post-conviction proceedings. *See State ex rel. Melinie v. State*, 93-1380 (La. 1/12/96), 665 So.2d 1172.

In *State v. Doucet*, 09-1065, pp. 6-7 (La.App. 3 Cir. 5/5/10), 36 So.3d 1105, 1110-11, *writ denied*, 10-1195 (La. 12/17/10), 51 So.3d 19, this court discussed ineffective assistance of counsel for failure to file a motion to reconsider sentence as follows:

> [W]hen the record contains sufficient evidence to address the ineffective assistance of counsel issue, this court examines "whether there was a reasonable probability that the trial court would have

reduced" Defendant's sentence if Defendant's trial counsel made or filed a motion to reconsider sentence. [*State v. Blake*, 03-1465 (La.App. 3 Cir. 5/5/04), 872 So.2d 602] at 608 (citing *State v. Prudhomme*, 02–511 (La.App. 3 Cir. 10/30/02), 829 So.2d 1166, *writ denied*, 02–3230 (La.10/10/03), 855 So.2d 324).

When the defense counsel fails to file a motion to reconsider sentence, Defendant may have a claim of ineffective assistance of counsel when Defendant "can show a reasonable probability, but for defense counsel's error, his sentence would have been different." *Prudhomme*, 829 So.2d at 1177 (citing *State v. Texada*, 98–1647 (La.App. 3 Cir. 5/5/99), 734 So.2d 854). Moreover,

> [a] claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief. This allows the trial judge an opportunity to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record contains evidence sufficient to decide the issue and the issue is raised by an assignment of error on appeal, it may be considered. *State v. James*, 95-962 (La.App. 3 Cir. 2/14/96); 670 So.2d 461.

*State v. Francis*, 99-208, pp. 10-11 (La.App. 3 Cir. 10/6/99), 748 So.2d 484, 491, *writ denied*, 00-544 (La.11/13/00), 773 So.2d 156.

To prove an allegation of ineffectiveness, the defendant must specifically show prejudice. *Blake*, 872 So.2d 602 (citing *State v. Reed*, 00-1537 (La.App. 3 Cir. 3/6/02), 809 So.2d 1261, *writ denied*, 02-1313 (La.4/25/03), 842 So.2d 391). "Whether or not a defendant received ineffective assistance of counsel is a two-part inquiry. First, we must determine whether the trial court would have reduced the Defendant's sentences upon the filing of a 'Motion to Reconsider Sentence.' Second, we must determine whether the sentences were excessive." *Id.* at 609.

The first question to be answered is whether the trial court would have reduced the defendant's sentence had a motion to reconsider sentence been filed. The defendant was convicted of manslaughter, which is punishable by imprisonment at hard labor for not more than forty years. La.R.S. 14:31. The defendant received the maximum sentence.

At sentencing, the court heard victim impact statements from the mother of Jackson's child, who was one year old at the time of Jackson's death. The court also heard from Jackson's sister, Keyanna Hobson. Defense counsel spoke on behalf of

the defendant, as the defendant was "almost painfully shy." Defense counsel advocated against imposition of the maximum sentence and indicated the defendant had no prior felony convictions. The state sought imposition of the maximum sentence, arguing the victim fell to the ground after the defendant shot him. The victim then asked the defendant for help, and the defendant cleared a jam from the gun and shot the victim again.

The judge subsequently noted he had reviewed the presentence investigation report (PSI) and letters submitted on behalf of the victim and the defendant. The judge then stated the following:

> [A]t a minimum, if you want -- just, best case scenario, characterizing his -- his actions on this night, using his irrational decision making, you know, to feel like -- assuming that he felt like he really was trying to protect his family, to chase somebody down that was not a threat to him, instead of calling the police to -- or even after -- or even if he felt like he just had to shoot him one time to neutralize the threat, which I -- which wasn't necessary into the facts of this case.

> But, even still -- And then -- But to feel like he needed to continue shooting and shooting, when there was no threat -- There was never any other allegation that there was any kind of threat, other than, I know that -- you know, the Defense argued that -- that this was a -- you know, tried to -- tried to liken this -- you know, tried to say the victim, here, was a peeping Tom, and -- and that, you know, tried to liken this to the shoot-the-burglar law, you know, where somebody breaks into your house, you're justified in shooting them and, you know -- and tried to equate, somehow, being a peeping Tom was somehow equivalent to that.

> And I -- And I think that's, actually, probably, why the jury ended up coming back with a manslaughter, because I think you got to the -- I mean, I think, you know, you made a compelling case and appealed to their emotions, and assuming all those facts were even accurate, as far as, you know, the peeping in the window, and all those things.

> But -- But that's not the law. The law doesn't say if somebody's looking in your window you get to go chase them down and execute them, which is what happened here. And so, I mean -- I -- So, I think, rather than the family asking me, asking the Court to, you know, take another life, when one's already been, you know -- In other words, the one that takes the life doesn't have the right to -- to say that somebody else ought to just get over it and -- and, you know, let this other man

5

get on with his life, the -- or let the -- so that he can get on with his life. It doesn't work that way.

I think that, you know -- Because, I mean, if Mr. Tutson has demonstrated that -- that he can't use better judgment than that in -- in deciding how to handle a situation that he found himself in, other than violence and murdering somebody, then -- then, you know, I think the family, you know, would like to not only protect other people from other would-be killers, but other people from Michael Tutson. That's what I read into what they -- what they've asked me to do.

So -- Anyway -- Because they can bring -- There's nothing -- nothing anybody here can do to bring the victim in this case back. So the best we can do is -- is try to have justice here and -- and protect society and, you know, all -- all those things are important.

And, you know -- And, I know, there was discussion about forgiveness and punishment. You know, that is such a tough, tough thing, you know -- Of course, my job is not to forgive anybody; that's not my job. My job is to -- is to punish people for their crimes to the extent there's a crime that -- that involves, you know, potential for rehabilitation. I have to -- You know, I have to consider all those things.

. . . .

So, in any event, I -- I do want to say that, you know, this -- this -- you know this is a -- it's such a senseless -- you know, every murder is -- is senseless, you know. There are some true, true really close calls sometimes as to whether something is self-defense or not, people get in this -- in the heat of battle, and somebody crosses that line, and -- and kills somebody.

But the -- But those cases are the exception rather than the rule, you know, when -- when somebody gets charged for killing somebody when there's a true, you know, struggle, whatever the case may be. But this is not that case. This is not even close to being that case. This was a one-sided deal and -- that you pursued, and that you made the decision, multiple times, to pull that trigger. Anyway.

. . . .

The -- You know, 14:31 is the manslaughter statute. It says (reading) "Whoever commits manslaughter shall be imprisoned at hard labor for not more than 40 years." And I also want to say that, you know, I have considered the aggravating and mitigating factors set forth in Code of Criminal Procedure Article 894.1 and -- in -- in the sentence.

I don't really -- It's really -- I just -- I just wanted to say for the record, I really don't find that any of these mitigating factors are applicable. I know there are a couple of them could be argued by Defense, but I just don't really find them to be applicable.

6

And -- And there are multiple of the aggravating factors that are -- that I find apply. I don't think I need to name -- I just -- or list them out, but I just -- I will just say that I have reviewed the sentencing guidelines under 894.1 and the aggravating and mitigating factors in -- in consideration of this sentence.

Anyway, I will just say at this time, I think the only appropriate sentence in this case I -- I mean, frankly, had this been a judge trial, I think second-degree murder would have been an appropriate verdict, based on the fact that -- you know, that Mr. Tutson, he chased down the victim and he proceeded to shoot him multiple times and -- clearly intending to -- to cause the death of the -- of the victim, Damion.

So, anyway, in -- in light of -- anyway -- and because of that, I think that -- that you -- the mercy that really -- that any mercy that you would have deserved in this case was shown by the jury in coming back with a manslaughter verdict instead of a second-degree murder verdict.

So, in -- Anyway, all those things being said, I'm -- I hereby sentence you to serve 40 years at hard labor with the Louisiana Department of Public Safety and Corrections.

The trial judge considered the circumstances of this case, the PSI, and the sentencing guidelines set forth in La.Code Crim.P. art. 894.1 before imposing the sentence. Based on the trial judge's statement that he felt the defendant was guilty of second degree murder, it is unlikely the trial judge would have reduced the defendant's sentence had defense counsel filed a motion to reconsider the sentence.

The second question to be answered is whether the defendant's sentence is excessive.

Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Barling*, 00–1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042–43 (citing *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00–165 (La. 6/30/00), 765 So.2d 1067).

. . . .

"[Louisiana] Const. art I, § 20, guarantees that, '[n]o law shall subject any person to cruel or unusual punishment.' " *Barling*, 779

7

So.2d at 1042–43. "To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering." *Id.* at 1042 (citing *State v. Campbell*, 404 So.2d 1205 (La.1981)).

The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *Barling*, 779 So.2d at 1042–43 (citing *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996)). In reviewing the defendant's sentence, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99–433 (La. 6/25/99), 745 So.2d 1183. "[T]he appellate court must be mindful that the trial court is in the best position to consider the aggravating and mitigating circumstances of each case. . . ." *State v. Williams*, 02-707 (La.App. 3 Cir. 3/5/03), 839 So.2d 1095, 1100 (citing *Cook*, 674 So.2d 957).

*State v. Rexrode*, 17-457, pp. 3-4 (La.App. 3 Cir. 11/15/17), 232 So.3d 1251, 1253-54. "Generally, maximum sentences are reserved for the most serious violation of the offense and the worst type of offender." *State v. Herbert*, 12-228, p. 5 (La.App. 3 Cir. 6/13/12), 94 So.3d 916, 920, *writ denied*, 12-1641 (La. 2/8/13), 108 So.3d 78. "[I]n the context of a maximum-sentence analysis for manslaughter, where the evidence would otherwise support a murder conviction, the defendant can be considered 'the worst type of offender.'" *State v. Ayala*, 17-1041, p. 7 (La.App. 3 Cir. 4/18/18), 243 So.3d 681, 687-88.

The defendant mentions he has no prior felony convictions and he was twenty years old at the time of the offense. He asserts he has the potential for rehabilitation. The defendant argues the trial court arbitrarily limited the mitigating factors and failed to consider his lack of felony convictions as such. Additionally, the defendant argues the trial judge should have also treated his youth as a mitigating factor. The defendant contends society recognizes that persons under the age of twenty-one are not mature adults. He states, "It has long been known that such individuals do not

always make responsible decisions." As examples of his statement, he claims that almost all car rental companies refuse to rent vehicles to persons under the age of twenty-one, and most impose heavy surcharges on persons under the age of twenty-five because they are not as responsible as older persons. The defendant further states the following in his appellate brief about the adolescent brain:

> In a neuroscience publication from 2013 discussing the "adolescent brain," the following was stated:
>
>> . . . It is well established that the brain undergoes a "rewriting" process that is not complete until approximately 25 years of age. [footnote omitted] This discovery has enhanced our basic understanding regarding adolescent brain maturation and it has provided support for behaviors experienced in late adolescence and early adulthood. Several investigators consider the age span of 10-24 years as adolescence, which can be further divided into substages specific to physical, cognitive, and social-emotional development. [footnote omitted].
>
> Arian, Miriam et al., Neuropsychiatric Disease and Treatment, *Maturation of the Adolescent Brain*, published online on 4/3/2013, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3621648/. In the same article it is stated that "[t]he fact that brain development is not complete until near the age of 25 years refers specifically to the development of the prefrontal cortex," which happens to be responsible for many things, including "the moderation of correct behavior." In discussing "behavioral problems and puberty," the article states that, because adolescents rely heavily on the emotional regions of their brains, it can be challenging for them to make decisions that adults consider logical and appropriate. *Id.*
>
> The very fact that the brain does not reach maturity until the age of twenty-five leads to the conclusion that younger persons have a very real capacity to change and moderate their behavior as they age. In other words, they have great potential for rehabilitation.

The defendant argues that because the trial judge failed to consider his youth as a mitigating factor, he had difficulty understanding his reaction to seeing a stranger peeping into the window of the room where his mother and teenaged sister slept. The defendant further argues the trial court did not appreciate that younger persons have more difficulty controlling their emotions. The defendant contends his

9

conduct should be viewed in a different light than the same conduct committed by older, more mature persons.

Manslaughter is a violent crime, and the defendant acted intentionally when he shot Jackson in the back. The defendant was a twenty-year-old first offender at the time the offense was committed. However, no argument regarding the adolescent brain was made in the trial court. Moreover, the Supreme Court, in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2016), decided to treat those who commit murder when they are under the age of eighteen at the time of the offense differently, and that decision is inapplicable to the defendant.

In *Soriano*, 192 So.3d 899, defendant and the victim were leaving an activity at a local restaurant when defendant stabbed the victim. The defendant then chased the victim through the parking lot, and, after the victim fell, stabbed the victim again. The state alleged that the defendant attempted to flee the scene but was apprehended by off-duty police officers. On appeal, the defendant contended he acted in self-defense, the victim had attacked him on previous occasions, and, on the night of the offense, the victim made threats toward him. The defendant was charged with second degree murder, but the jury returned a responsive verdict of guilty of manslaughter. The twenty-five-year-old first felony offender was sentenced to serve forty years at hard labor. This court affirmed that sentence.

In *State v. Bowens*, 14-416 (La.App. 4 Cir. 12/10/14), 156 So.3d 770, *writ denied*, 15-66 (La. 10/23/15), 179 So.3d 598, the victim got into a verbal dispute with the defendant and his brother. That dispute escalated into a physical altercation. Ultimately, a "gun battle" erupted between the victim and the defendant. *Id.* at 773. When both men ran out of ammunition, the victim attempted to run away, but the defendant reloaded his gun and shot the victim in the back of the leg. The victim attempted to get away, but the defendant shot him again. As the victim was lying

on the ground pleading for his life, the defendant shot him several more times in the head and torso. The defendant was charged with second degree murder but found guilty of manslaughter and sentenced to serve forty years at hard labor. The trial court noted the victim was protecting himself when he got his gun, as the defendant and his brother were attacking the victim and that attack was not waning. The fourth circuit affirmed the sentence, remarking the defendant shot at the victim seventeen times and continued to shoot the victim while the victim was on the ground, he showed no remorse for his actions, and he continued to argue that he acted in self-defense.

In *State v. White*, 48,788 (La.App. 2 Cir. 2/26/14), 136 So.3d 280, *writ denied*, 14-603 (La. 10/24/14), 151 So.3d 599, the nineteen-year-old first felony offender was charged with second degree murder. He and his two brothers fought with the victim. The victim got the best of the three brothers and withdrew to the carport of a neighbor's house. The three brothers then grabbed a golf club and a plastic chair and re-initiated the fight. The victim again overpowered the brothers. The brothers left, and the victim returned to the carport. Moments later, the defendant returned with a handgun and fired at least two rounds that struck the victim. The defendant was convicted of manslaughter and sentenced to serve forty years. The second circuit affirmed the defendant's sentence, stating:

> An examination of the facts in this case demonstrates that this was a second degree murder case in which defendant benefitted greatly from the lesser verdict of manslaughter. Three brothers fought a lone man and used as weapons a golf club and a chair. When the fight ended, Powell who was wearing only basketball shorts walked away, but defendant got a pistol and shot Powell. Intentionally pointing and firing a gun at close range supports a specific intent by defendant to kill the unarmed and defenseless victim.

11

Based on the facts of the offense and the above-cited cases, we find the trial court did not abuse its discretion when imposing the maximum sentence.  Thus, that sentence is not excessive.

Even if defense counsel had filed a motion to reconsider sentence, the defendant's sentence would have been deemed appropriate under the circumstances. Therefore, defense counsel's failure to file the motion did not prejudice the defendant.  Consequently, the defendant's sentence is affirmed.

## <u>CONCLUSION</u>

The defendant's conviction and sentence are affirmed.

**AFFIRMED.**